**United States District Court**
**District of Massachusetts**

```
                              )
DANA E. LOPES,                )
                              )
          Plaintiff,          )
                              )
          v.                  )      Civil Action No.
                              )      14-10679-NMG
GERALDINE RIENDEAU, ET AL.,   )
                              )
          Defendants.         )
                              )
```

## MEMORANDUM & ORDER

GORTON, J.

This case arises out of a dispute concerning the treatment of plaintiff's Hepatitis C while he was an inmate in a Massachusetts correctional facility.  Plaintiff claims that 1) healthcare personnel at Old Colony Correctional Center failed to provide him with satisfactory medical care in violation of the Massachusetts Tort Claims Act, M.G.L. c. 258, § 2, and Article 26 of the Massachusetts Declaration of Rights and 2) retaliated against him when he reported the inadequate care.

Summary judgment motions filed by 1) Geraldine Riendeau and Dyana Nickl, 2) the Massachusetts Partnership for Correctional Healthcare ("the Partnership"), Paul Caratazzola and Patricia Davenport-Mello and 3) Barbara Berg are currently pending before the Court.  For the reasons that follow, the motions will be allowed.

I.    **Factual Background**

    **A. The Parties**

When this law suit was filed, <u>pro</u> <u>se</u> plaintiff Dana E. Lopes ("plaintiff") was incarcerated at Old Colony Correctional Center ("OCCC") in Bridgewater, Massachusetts.  He is currently incarcerated at MCI-Shirley in Shirley, Massachusetts.

The first two defendants, Geraldine Riendeau and Dyana Nickl, are associated with a department of the University of Massachusetts Medical School ("UMMS") known as the University of Massachusetts Correctional Health ("UMCH").  The Massachusetts Department of Correction ("DOC") hired UMMS to provide medical care to OCCC prisoners from 2003 through June, 2013.  Nickl served as the UMCH Grievance and Appeals Coordinator.  Riendeau is a registered nurse and worked as the Department's Health Service Administrator.  UMCH was also initially a defendant.

The second set of defendants is associated with the Partnership, a private company that replaced UMCH as the healthcare provider at OCCC in July, 2013.  Defendant Paul Caratazzola started working as the Partnership's Health Service Administrator in July, 2013.  At the same time, Defendant Pat Davenport n/k/a Patricia Davenport-Mello began working as its Director of Nursing.  The Partnership is also a defendant.  Collectively, the Partnership, Caratazzola and Davenport-Mello are referred to as "the Partnership defendants".

-2-

Finally, defendant Barbara Berg worked for both UMCH and the Partnership.  UMCH hired her to work at OCCC as a licensed nurse practitioner in 2003.  In July, 2013, when the Partnership replaced UMCH, it hired Berg and she continued to work at OCCC.

### B. Alleged Inadequate Medical Care

Plaintiff suffers from chronic Hepatitis C, end-stage liver disease, cirrhosis of the liver and liver cancer.

From 2003 to 2013, UMCH handled plaintiff's medical care. Plaintiff admits that from November, 2003 to May, 2004, UMCH healthcare personnel treated his Hepatitis C using Peg-Interferon, also known as Peg-Intron, and Ribavirin.  Plaintiff also concedes that the treatment with those drugs was suspended because he became anemic, experienced fluid buildup in his abdomen and had "vision changes with cotton woolspots seen on his eye exam".

Plaintiff was treated at Tufts-New England Medical Center ("Tufts") in August, 2005 and April, 2006.  In 2005, medical records show that a doctor concluded that plaintiff was not a good candidate for a liver transplant because there was a higher risk that he would die from a transplant than from his liver disease.  In 2006, medical records show that another doctor determined that plaintiff's liver disease was stable and recommended that he lose weight and stop using narcotics to reduce the risk that would accompany a liver transplant.

-3-

Plaintiff denies the assertions regarding a possible transplant based on lack of knowledge but provides no support for his denials.  He admits that between 2008 and 2012 UMCH personnel continued to monitor his liver disease with scans and medical consultations.

As plaintiff concedes, in 2011, the Food and Drug Administration ("FDA") approved new medicines for the treatment of Hepatitis C, Boceprevir and Teleprevir.  They both must be taken, however, with Peg-Interferon, the drug to which plaintiff reacts negatively.

In March, 2012, a third doctor determined that plaintiff was ill-suited for a transplant because the lesion on his liver was too small.  Plaintiff disputes that conclusion, asserting that he was stable and could have received a transplant but provides no support for his position.  He admits that he saw various medical personnel in 2012 and 2013 and that there was continued surveillance of his medical situation, including a CT scan, an MRI, a fine needle biopsy and a radio frequency ablation of the lesion on his liver.

In July, 2013, the Partnership became the medical provider for OCCC.  In April, 2014, the Director of Clinical Services of the DOC Health Services Division wrote plaintiff a letter stating that the Partnership had no alternative to the Peg-Interferon treatment for Hepatitis C and explaining that his

-4-

negative reaction to the treatment could result in blindness if that treatment continued.

Plaintiff does not dispute that when the Partnership took over his case in July, 2013, healthcare personnel monitored his condition with lab tests and consultations with medical experts while the Partnership was waiting for the FDA to approve a new medication to treat Hepatitis C.  The FDA approved Harvoni as a Hepatitis C treatment in October, 2014 and in January, 2015 Plaintiff saw a healthcare professional who recommended that he be treated with Harvoni.  Shortly thereafter, he participated in a successful 12-week Harvoni trial.  After the trial, plaintiff no longer tested positive for Hepatitis C.  Plaintiff admits all of these facts but contends that if he had gotten treatment earlier, it would have prevented him from contracting liver cancer.  After the successful treatment, Partnership professionals continued to monitor plaintiff for the return of Hepatitis C and to provide care for other medical conditions.

Lopes does not dispute that in May, 2016 he told the Partnership that he refused to undergo any follow-up treatments for liver disease and any gastrointestinal evaluations.  He also signed a "Release of Responsibility" form that stated that he was aware of the risks of refusing treatment.  Plaintiff explains that he has refused treatment to "protest[] the inadequate treatment . . . which led to liver cancer".

-5-

### C. Purported Retaliation

In 2012, plaintiff filed a complaint against Riendeau with the Division of Health Professions Licensure. He alleges that she retaliated against him by asking Berg to confiscate his medicine in early 2013. This Court liberally construed the pro se complaint to state a claim of retaliation against Riendeau, UMCH, Berg and the Partnership. The claim against Riendeau and UMCH has been dismissed but the claim against Berg and the Partnership is pending.

According to Berg, plaintiff's medications were removed from his cell in February, 2013 because he was non-compliant with the guidelines concerning his "keep on person" ("KOP") medications. Consequently, UMCH required him to get his medications from the medication line. Defendant Berg's version of the facts is supported by a letter from Lawrence Wiener, the Assistant Deputy Commissioner of Clinical Services, which states that plaintiff was found to be non-compliant in a KOP drug audit. Plaintiff denies that he was non-compliant but provides no other support for his denial.

## II. Procedural History

In February, 2014, plaintiff filed suit alleging that defendants provided inadequate medical treatment in violation of 1) the Eighth Amendment under 42 U.S.C. § 1983, 2) Article 26 of the Massachusetts Declaration of Rights and 3) the Massachusetts

-6-

Torts Claims Act, M.G.L. c. 258, § 2 ("MTCA"). Plaintiff also claims that defendants retaliated against him in violation of the First Amendment under 42 U.S.C. § 1983. He seeks access to alternative medications, specifically, Boceprevir and Teleprevir, a liver transplant and compensatory and punitive damages. Defendants timely responded to the complaint.

In March, 2015, this Court adopted the Report and Recommendation ("R&R") of Magistrate Judge Marianne Bowler ("MJ Bowler") and allowed UMCH's motion to dismiss the claims against it and summary judgment of dismissal of the 42 U.S.C. § 1983 Eighth Amendment claim against the Partnership defendants and Berg. In March, 2016, this Court adopted the portion of MJ Bowler's second R&R which allowed summary judgment of dismissal of the Section 1983 Eighth Amendment and retaliation claims against Riendeau and Nickl. The remaining claims are that Riendeau and Nickl, the Partnership defendants and Berg failed to provide adequate healthcare in violation of Article 26 and the MTCA and that Berg and the Partnership retaliated against plaintiff.

In July, 2016, three separate motions for summary judgment were filed by 1) Riendeau and Nickl, 2) the Partnership defendants and 3) Berg. That same month, the pro se plaintiff moved to have counsel appointed on his behalf. That motion was denied in December, 2016 and at that time the Court gave

plaintiff 35 additional days to respond to the summary judgment motions.  In January, 2017, plaintiff requested a second extension of time to respond.  Cognizant of plaintiff's <u>pro</u> <u>se</u> status, the Court allowed a second extension and plaintiff responded to the summary judgment motions shortly thereafter.

## III.   <u>Motion for Summary Judgment</u>

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

If the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 324 (1986).  The Court must view the

entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

Defendants move for summary judgment on all remaining claims against them.

## B. Article 26 of the Massachusetts Declaration of Rights

### 1. Legal Standard

Article 26 of the Massachusetts Declaration of rights prohibits cruel or unusual punishment. Mass. Const. Pt. 1, Art. 26.  The protections enshrined in Article 26 "are at least equally as broad as those guaranteed under the Eighth Amendment." Torres v. Comm'r of Correction, 695 N.E.2d 200, 204 (Mass. 1998) (quoting Michaud v. Sheriff of Essex County, 458 N.E.2d 702, 708 (Mass. 1983)).  To succeed on an Article 26 claim, a plaintiff must demonstrate that the defendants acted with deliberate indifference. See 'Abdullah v. Sec'y of Pub. Safety, 677 N.E.2d 689, 694 (Mass. App. Ct. 1997). Specifically, a plaintiff must show

(1) a condition or situation which poses a substantial risk of serious harm; and (2) facts establishing that a prison official has knowledge of the situation and ignores it.

Torres, 695 N.E.2d at 204 (quoting Good v. Commissioner of Correction, 629 N.E.2d 1321, 1325 (Mass. 1994)) (internal quotations omitted).

The Article 26 standard is "virtually identical" to the Eighth Amendment standard. See Cryer v. Spencer, No. 11-cv-10654-DJC, 2012 WL 892883, at *7 (D. Mass. Mar. 15, 2012)(collecting cases); see also Hennessy v. Dennehy, No. 08-cv-11724-NG, 2010 WL 3464234, at *10 (D. Mass. Sept. 1, 2010) ("It appears that the Eighth Amendment's 'deliberate indifference' standard applies with equal force to claims under article 26."); Carter v. Symmes, No. 06-cv-10273-PBS, 2008 WL 341640, at *5, n.3 (D. Mass. Feb. 4, 2008) ("Because Article 26 and the Eighth Amendment guarantee essentially the same scope of rights, there is no need for separate analyses.").

### 2. Defendants Riendeau and Nickl

Defendants Riendeau and Nickl move for summary judgment on plaintiff's Article 26 claim.  They assert that the Court's conclusion in March, 2016 that Riendeau acted reasonably and that they neither ignored plaintiff's medical conditions nor violated the Eighth Amendment necessitates the conclusion that they did not violate Article 26.  Plaintiff responds that defendants "failed to address the state law claims".

-10-

Riendeau and Nickl's assertion that dismissal of the Eighth Amendment claim warrants entry of summary judgment on the Article 26 claim is well taken. <u>See</u> <u>Cryer</u>, 2012 WL 892883, at *7.  As another session of this Court has concluded, "there is no need for separate analyses" of Eighth Amendment and Article 26 deliberate indifference claims.  After evaluating Riendeau and Nickl's conduct, this Court has already determined that

> the decisions not to prescribe boceprevir and telaprevir, to require that plaintiff obtain skin lotions and creams in the medication line, to have plaintiff undergo an FNA biopsy and not to order a liver transplant . . . did not contravene the objective prong of the Eighth Amendment.

<u>Lopes</u> v. <u>Riendeau</u>, 177 F. Supp. 3d 634, 660 (D. Mass. 2016). Consistent with the above, this Court concludes that there is no genuine issue of material fact with respect to whether Riendeau and Nickl were deliberately indifferent and they are entitled to judgment as a matter of law on the Article 26 claim.

### 3. The Partnership Defendants

Caratazzola, Davenport-Mello and the Partnership contend that summary judgment is appropriate with respect to plaintiff's Article 26 claim against them because 1) the Court previously determined that they did not act with deliberate indifference, 2) they provided plaintiff with adequate care and 3) the Partnership cannot be held liable on a respondeat superior theory.  Plaintiff responds that the Partnership defendants fail

to address his allegations adequately and that genuine issues of material fact remain.

The Partnership defendants correctly contend that they are entitled to summary judgment on the Article 26 claim. The Court's earlier conclusion that those defendants did not act with deliberate indifference under the Eighth Amendment indicates that the same conclusion is warranted for Article 26. See, e.g., Cryer, 2012 WL 892883, at *7. Undisputed facts in the summary judgment record demonstrate that, rather than ignoring plaintiff's condition, the Partnership defendants closely monitored it with lab tests in July, 2013, diagnostic imaging in August, 2013 and chronic disease consultations in September, 2013. See Torres, 695 N.E.2d at 204.

Plaintiff alleges that Caratazzola and Davenport-Mello prevented healthcare providers from prescribing medications without Peg-Interferon to him. Defendants contend that they withheld the Boceprevir and Telaprevir that plaintiff requested because he "has a specific viral mutation, which predicts resistance to. . . Boceprevir and Telaprevir." Defendants support their statement with an affidavit from Dr. Maria Angeles and a hospital record dated July, 2014. Lopes denies the statement but offers no support for his denial. He further contends that his negative reaction to the medications was discovered years after he was first denied treatment.

-12-

Although the Court must draw reasonable inferences in favor of plaintiff, it

> is not obliged to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement [from] a party

Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 47 (1st Cir. 2008).  Plaintiff's conclusory statement that he would not react negatively to Boceprevir and Telaprevir lacks support. Accordingly, the Court will disregard that statement.

As for plaintiff's contention that his resistance to the drugs was discovered long after he was first denied treatment, the record shows that the Partnership was aware of it about a year after it took over plaintiff's treatment.  Given the complexity of the medical situation and the ongoing monitoring from the Partnership, this delay fails to demonstrate that it "kn[e]w and disregard[ed] an excessive risk to inmate health or safety." 'Abdullah, 677 N.E.2d at 694.

This Court's determination that the undisputed facts show that Caratazzola and Davenport-Mello did not act with deliberate indifference necessitates the conclusion that the Partnership did not act with deliberate indifference because plaintiff makes no allegation of the Partnership misconduct aside from the specific actions of those individuals.  Accordingly, summary judgment of dismissal of the Article 26 claim against all three Partnership defendants is warranted.

-13-

### 4. Defendant Berg

Defendant Berg, who worked as a licensed nurse practitioner for both UMCH and the Partnership, also moves for summary judgment on plaintiff's Article 26 claim.  She asserts that, because this Court determined that the medical care that she provided was not deliberately indifferent under the Eighth Amendment, the conclusion that it does not violate Article 26 necessarily follows.  She further asserts that plaintiff's allegation that she required him to wait in line for his medicine does not show deliberate indifference.  Plaintiff responds that Berg's motion inadequately addresses his allegations.

Viewing the facts in plaintiff's favor, the Court agrees that summary judgment is warranted on the Article 26 claim against Berg.  As she points out, because the deliberate indifference analysis for the Eighth Amendment is virtually identical to the analysis under Article 26, the Court's earlier dismissal of plaintiff's 42 U.S.C. § 1983 claim indicates that dismissal of the Article 26 claim is appropriate. See Cryer, 2012 WL 892883, at *7.

Moreover, plaintiff's allegations against Berg are limited. He contends that she "confiscate[d his] medications from his cell and told him he has to . . . wait in a medication line". Although he admits that Berg's stated reason for these actions

-14-

was that he was "hoarding meds", plaintiff asserts that Berg was
acting on Riendeau's orders and Riendeau was retaliating against
him.  As this Court previously determined,

> [e]ven accepting that plaintiff has a 'weak physical
> constitution', plaintiff could still receive medications
> for the skin conditions by waiting in the medication line.

There is no evidence that, by requiring plaintiff to wait in
line for his medications, Berg was aware of and ignored
plaintiff's health issues. 'Abdullah, 677 N.E.2d at 694.

In sum, there is no genuine issue of material fact that
prevents summary judgment on the Article 26 claim against Berg.
She did not act with deliberate indifference and she is entitled
to summary judgment on the Article 26 claim as a matter of law.

### C. Massachusetts Torts Claims Act Claim

#### 1. Legal Standard

The MTCA allows suits against public employers for the
"negligent or wrongful act[s] or omission[s] of public
employees." M.G.L. c. 258, § 2.  Under the MTCA, public
employees are immune from liability for negligent or wrongful
acts if they are acting within the scope of their employment.
Id.  The Supreme Judicial Court of Massachusetts has determined
that the University of Massachusetts and its medical school,
UMMS, are public employers. McNamara v. Honeyman, 546 N.E.2d
139, 142 (Mass. 1989).

The fact that UMMS is a public employer does not, however, automatically render its personnel public employees. Id. To determine whether an employee qualifies as a public employee, courts apply the test used to determine if "a principal may be liable under the common law doctrine of respondeat superior" for its agent's acts. Id. (quoting Kelley v. Rossi, 481 N.E.2d 1340, 1342 (Mass. 1985)).

That test considers whether the employee is "subject to the direction and control of the Commonwealth." Hopper v. Callahan, 562 N.E.2d 822, 830 (Mass. 1990). For instance, if the public employer determines a healthcare provider's schedule, controls the details of her work and chooses which patients she treats, the healthcare provider is a public employee. Id.; Williams v. Hartman, 597 N.E.2d 1024, 1026 (Mass. 1992). Although public employees are immune from suits alleging negligence, or even gross negligence, they may be held liable for intentional torts. Monahan v. Town of Methuen, 558 N.E.2d 951, 958 (Mass. 1990).

### 2. Defendants Riendeau and Nickl

Riendeau and Nickl contend that they are public employees of UMCH, a department of UMMS, and thus immune from suit under the MTCA. To support that contention, they submitted affidavits with respect to who directed and controlled their work. Riendeau's affidavit states that she worked for UMMS between 2012 and 2013 and it paid her salary but UMCH determined her

hours, chose the patients that she saw and oversaw her treatment decisions.  Nickl also submitted an affidavit that states that UMMS paid her salary but UMCH determined her schedule and controlled the details of her work.

Plaintiff disputes the facts offered in the affidavits on the grounds that his "complaint does not reference the allegation".  He does not dispute the truth of the statements in the affidavits.  Accordingly, because the Court is not obliged to consider plaintiff's conclusory denials of who directed and controlled the work of Riendeau and Nickl, it considers those facts undisputed. Torrech-Hernandez, 519 F.3d at 47.  UMMS and its department, UMCH, determined these defendants' schedules, paid their salaries and oversaw their daily tasks.  This suffices to demonstrate that they are public employees and immune from suit for negligence under the MTCA. McNamara, 546 N.E.2d at 142.

Moreover, plaintiff's allegation that defendants acted with deliberate indifference does not support an intentional tort claim that would fall outside of the immunity provided by the MTCA. See Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails . . . something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").  Therefore, there is no genuine issue of material fact with respect to the immunity from

-17-

suit under the MTCA of Riendeau and Nickl and they are entitled to judgment on the MTCA claim as a matter of law.

### 3. The Partnership Defendants

The Partnership, Caratazzola and Davenport-Mello, move for summary judgment on the MTCA claim on the grounds that the Partnership is a private contractor, not a public employer, and thus the MTCA does not apply to it.  Plaintiff admits that the Partnership is a privately owned company and that it, not the DOC, is responsible for its staff members.  Lopes also admits that Caratazzola and Davenport-Mello have never been employed by the DOC, although he contends that they "acted in concert with the DOC and other defendants".

The position of the Partnership defendants that no MTCA claim can be asserted against them is well taken.  The MTCA specifically exempts "private contractor[s] with any such public employer[s]." Commesso v. Hingham Hous. Auth., 507 N.E.2d 247, 248 (Mass. 1987) (quoting M.G.L. c. 258, § 1).  Accordingly, plaintiff's concession that the Partnership is a privately owned company necessitates the conclusion that no MTCA claim may be brought against it.  Similarly, plaintiff's admission that defendants Caratazzola and Davenport-Mello are paid, supervised and directed by MHM Services, Inc., a private company affiliated with the Partnership, compels the conclusion that, as private employees, they are exempt from an MTCA claim. Id.  Therefore

-18-

the Partnership, Caratazzola and Davenport-Mello are also
entitled to judgment on the MTCA claim as a matter of law.

### 4. Defendant Berg

Defendant Berg contends that summary judgment is
appropriate for the MTCA claim against her because, while she
worked for UMCH, she was a public employee and thus immune from
suit and, while she worked for the Partnership, she was a
private employee and thus exempt from MTCA coverage.  She
asserts that she was under the direction and control of UMCH and
the Partnership during her employment by those companies and was
never employed by the DOC.  Plaintiff disputes Berg's employment
record on the grounds that he has "no knowledge of her personnel
record" and contends that his treatment did not accord with the
policies and procedures of UMCH and the Partnership.

Because Lopes does not dispute the truth of Berg's recital
of her employment record and provides no evidence that her
treatment ran afoul of policies and procedures, the Court will
disregard his denial of her employment record. Torrech-
Hernandez, 519 F.3d at 47.  Consequently, defendant Berg is
entitled to judgment on the MTCA claim as a matter of law.
McNamara, 546 N.E.2d at 142; M.G.L. c. 258, § 1.

### D. Retaliation Claim Pursuant to 42 U.S.C. § 1983

#### 1. Legal Standard

To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a prisoner must show that he 1) made a protected statement, 2) experienced an adverse action and 3) there was a causal connection between the statement and the adverse action. Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  Retaliation claims from incarcerated individuals can be

> easily fabricated[ ] and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.

Id. (quoting Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003)).  Accordingly, such claims must be supported by facts, "not [] the gossamer strands of speculation and surmise." Id. Although the sequence of events may enable an inference that there was retaliatory animus at the motion to dismiss stage, Hudson v. MacEachern, 94 F. Supp. 3d 59, 68 (D. Mass. 2015), when a defendant offers a legitimate reason for the action and the plaintiff provides no evidence to dispute it, a court will not "speculate about a hidden motive" at the summary judgment stage.  Hannon, 645 F.3d at 51.

#### 2. The Partnership

Plaintiff alleges that, after he filed an institutional grievance against Riendeau, she retaliated against him by ordering Berg to take medicine from his cell and require him to

use the medication line.  The Partnership asserts that summary judgment on the retaliation claim against it is warranted because the incident occurred in February, 2013, before it was present at OCCC.  Because plaintiff does not dispute that the incident occurred before the Partnership was his healthcare provider, it is entitled to judgment as a matter of law on the retaliation claim.

### 3. Defendant Berg

Defendant Berg correctly contends that summary judgment is warranted on the retaliation claim against her because there is a dearth of evidence that she acted with retaliatory intent. Berg submits that plaintiff was non-compliant with his KOP medications so the UMCH staff required him to receive daily doses in the medication line to prevent over-dosing.  In plaintiff's version of events, Berg retaliated against him after he filed a complaint against Riendeau by requiring him to obtain his medication in the line.

Plaintiff, however, offers no evidence that Berg had retaliatory intent.  In fact, the purported reason for the retaliation, that defendant Riendeau was upset about the grievance plaintiff filed, did not relate to Berg at all.  This Court declines to "speculate about a hidden motive." Hannon, 645 F.3d at 50-51.  There is no evidence of a causal link between

the protected speech and Berg's actions. Thus, Berg is entitled
to summary judgment on the retaliation claim against her.[1]


**ORDER**

In accordance with the forgoing, defendants' motions for summary
judgment (Docket Nos. 137, 147 and 153) are **ALLOWED.**




**So ordered.**


                                    /s/ Nathaniel M. Gorton_____
                                    Nathaniel M. Gorton
                                    United States District Judge

Dated March 23, 2017

---

[1] Because defendants are entitled to summary judgment on the
aforementioned grounds, there is no need to address their claims
that plaintiff failed to exhaust his administrative remedies or
that they are entitled to qualified immunity.